1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MOINUL I. AZAD,

     Plaintiff,

v.

THE GOODYEAR TIRE & RUBBER CO.,

     Defendant.

Case No. 2:11-CV-00290-KJD-GWF

**ORDER**

     Presently before the Court is Defendant's Motion for Summary Judgment (#25). Plaintiff filed a response in opposition (#27) to which Defendant replied (#28). Defendant also filed a Supplement (#30) to its reply.

I.  Facts

     Plaintiff was involved in an automobile accident on July 17, 2010. At the time of the accident, Plaintiff told police officers that the accident occurred because a tire blew out. Approximately three months later, on October 7, 2010, Plaintiff faxed a letter dated October 6, 2010, to Defendant notifying Defendant for the first time of the subject accident. On October 12, 2010, Defendant responded to Plaintiff's fax and asked Plaintiff to produce the subject tires for examination. On October 28, 2010, Plaintiff sent a fax to Defendant with a number of documents.

1   One of the documents attached to the fax was a Simple Promissory Note.  That Note

2   indicated that on July 20, 2010, Plaintiff surrendered title to the subject vehicle to Quality Towing.

3   On November 8, 2010, Defendant sent a letter to Plaintiff stating, in part: "This will also confirm our

4   telephone conversation today, wherein you advised that the subject tire(s) and vehicle are no longer

5   available and in fact have been salvaged along with the subject vehicle."  On December 10, 2010,

6   Plaintiff faxed a letter to Defendant stating, in part: "Regarding proof of your actual tires on my

7   vehicle, it will remain up to Goodyear Tire to do their own search about my car and tires on it, with

8   the towing company/junk yard as evidence per their documents already sent to you at my cost."

9   Plaintiff's amended complaint alleges that while he was driving on I-15 southbound on June

10   17, 2010, two tires on his vehicle blew out causing an accident.  On March 19, 2012, Defendant

11   properly served Plaintiff with a Request for Production of Tires Pursuant to Rule 34.  That Request

12   demanded that Plaintiff produce "[t]he four tires, including any tire pieces that were mounted on

13   Plaintiff's 2002 KIA Sportage on June 17, 2010 and involved in the accident that is the subject of

14   Plaintiff's Amended Complaint."  Plaintiff's response to Defendant's Rule 34 request was due on

15   April 23, 2012.  Plaintiff has not served a written response or produced the tires for inspection.

16   Also on March 19, 2012, Defendant properly served Plaintiff with Defendant's First Set of

17   Interrogatories Directed to Plaintiff.  Interrogatory Number 14 asked: "State whether you are in

18   possession of the tires involved in the Accident.  If not, state the last time you were in possession of

19   said tires, the circumstances under which they left your possession, and their current custodian and

20   location."  Plaintiff's response to Interrogatory Number 14 provides: "No. I explained in detail in

21   Goodyear Tire Co." Exhibit I at 2, Defendant's Motion for Summary Judgment (#25-9).

22   On March 19, 2012, Defendant served a subpoena on South Strip Towing (which also

23   operates as Quality Towing).  By letter dated April 3, 2012, South Strip Towing stated, in part: "The

24   referenced vehicle was sold to All Japanese Auto on or about August 2, 2010."  On April 3, 2012,

25   undersigned counsel called All Japanese Auto Parts and spoke to an unidentified male.  The male

26   asked for the vehicle identification number and stated that "It's probably re-bar by now."  On April

2

5, 2012, Defendant served a subpoena on All Japanese Auto Parts.  On April 19, 2012, All Japanese Auto Parts sent a fax to counsel attaching a "Vehicle Scrapping" document.  According to the Vehicle Scrapping report, the vehicle involved in the subject accident was scrapped on October 4, 2010, which was three days prior to Defendant's first notice of the incident or claims.  Additionally, Defendant's Interrogatory Number 18 stated: "If you claim that the tire described in your amended Complaint was defectively designed or manufactured or that the labeling or warnings on, attached to or accompanying the tire were inadequate, misleading or insufficient, set forth all facts (not legal conclusions) in support of your contention(s)."  Plaintiff's response to Interrogatory Number 18 states: "N/A."

Defendant has now moved for summary judgment on Plaintiff's claims, asserting that Plaintiff can produce no admissible evidence of product defect or negligence.  Additionally, Defendant argues that Plaintiff's claims should be dismissed as a Rule 37 sanction, since Plaintiff does not deny that he did not preserve the most crucial evidence in this action.

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party.  See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.

3

1  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

2  issues of controversy in favor of the non-moving party where the facts specifically averred by that

3  party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497

4  U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

5  (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

6  issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere

7  speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th

8  Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine

9  issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d

10  1054, 1061 (9th Cir. 2002).

11        Summary judgment shall be entered "against a party who fails to make a showing sufficient

12  to establish the existence of an element essential to that party's case, and on which that party will

13  bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

14  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

15  III.  Analysis

16        Construing Plaintiff's *pro se* complaint liberally, it appears that Plaintiff is attempting to

17  bring tort and product liability claims against Defendant based on the alleged failure of Goodyear

18  tires.

19          A.  Strict Products Liability Claim

20        To state a claim for strict product liability under Nevada law, a plaintiff is required to prove:

21  "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the

22  time the product left the manufacturer, and (3) the defect caused the plaintiff's injury."  Rivera v.

23  Phillip Morris, 209 P.3d 271, 275 (Nev. 2009) (citing Fyssakis v. Knight Equip. Corp., 108 Nev.

24  212, 214, 826 P.2d 570, 571 (1992)).  "In strict product liability cases, the plaintiff carries both the

25  burden of production and the burden of persuasion." Id. (citing Shoshone Coca-Cola v. Dolinski, 82

26  Nev. 439, 443, 420 P.2d 855, 857-58 (1966)).  To prove proximate cause in a strict products liability

4

1   action in Nevada, "the plaintiff must show that the design defect in the product was a substantial

2   factor in causing his injury." <u>Price v. Blaine Kern Artista, Inc.</u>, 111 Nev. 515, 893 P.2d 367, 370

3   (Nev. 1995).

4          Here, Plaintiff has not identified any evidence from which a reasonable trier of fact could

5   conclude by a preponderance of the evidence that the product had a defect which rendered it

6   unreasonably dangerous and that it existed at the time the tires left the manufacturer.  With the

7   absence of the tires, there is no evidence, other than Plaintiff's own statement, that the accident was

8   even caused by a "blow out" of the tire as argued by Plaintiff.  Other courts have held that "[f]ailure

9   of a tire is not such an unusual event that a defect can be inferred solely from the fact that the

10  accident occurred." <u>Clement v. Griffin</u>, 634 So. 2d 412, 429-30 (La. App. 4th Cir. 1994); <u>In re</u>

11  <u>Bridgestone/Firestone Inc.</u>, 2003 WL 430491, *3-4 (S.D. Ind. Feb. 11, 2003)(in a similar case where

12  tires were sold for salvage and were unavailable for production or inspection, the court concluded

13  that plaintiff had not identified sufficient evidence from which a jury could reasonably conclude that

14  the alleged defect caused the accident).

15         Plaintiff has not opposed Defendant's motion for summary judgment by setting forth any

16  specific facts demonstrating a genuine factual issue for trial.  Therefore, the Court grants Defendant's

17  motion for summary judgment on Plaintiff's strict products liability claim.

18         <u>B.  Negligence</u>

19         To state a claim for negligence under Nevada law, a plaintiff must establish: (1) the defendant

20  owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal

21  cause of the plaintiff's injuries; and (4) plaintiff suffered damages.  <u>See</u> <u>Scialabba v. Brandise Constr.</u>

22  <u>Co.</u>, 921 P.2d 928, 930, 112 Nev. 965, 968 (Nev. 1996).

23         Here, Plaintiff's negligence claim against Defendant must fail for the same reasons as his

24  product liability claim.  Specifically, Plaintiff cannot produce the subject tires and therefore cannot

25  establish that they were defective.  <u>See</u>, <u>e.g.</u>, <u>Trition Energy Corp. v. Page Airport Servs.</u>, 68 F.3d

26  1216, 1218 n.1 (9th Cir. 1995) ("Continental argues that the district court erred by granting summary

judgment solely on the basis of strict liability without resolving the breach of warranties and negligence claims. Because we find that the plaintiffs failed to establish that a defect existed at the time the circuit breaker passed to the hands of Square D, an element which is essential to both the breach of warranties and negligence claims, it is unnecessary to address these claims specifically."). Therefore, the Court grants Defendant's motion for summary judgment on Plaintiff's claim for negligence.

C.  Sanctions for Spoliation

Even if Plaintiff had produced enough evidence to survive the motion for summary judgment, the Court would still dismiss Plaintiff's complaint.  Litigants owe an "uncompromising duty to preserve" what they know or should know will be relevant evidence in a lawsuit even though no discovery requests have been made and no order to preserve evidence has been entered.  Kronisch v. United States, 150 F.3d 112, 130 (2nd Cir. 1998); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1575 (Fed. Cir. 1996); United Factory Furniture Corp. v. Alterwitz, 2012 WL 1155741, *3 (D. Nev. Apr. 6, 2012).  "Under the court's inherent power to manage its own affairs, the court may impose severe sanctions against a party that engages in the spoliation of evidence."  Alterwitz, 2012 WL 1155741 at *3.

Before dismissing a case, the district court should consider the following factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." Leon v. IDX Sys. Corp., 464 F.3d 951, 958 (9th Cir. 2006).  "While the district court need not make explicit findings regarding each of these factors, a finding of willfulness, fault, or bad faith is required for dismissal to be proper."  Id. Additionally, the district court must consider "less severe alternatives" than outright dismissal. Id.

Here, dismissal of Plaintiff's lawsuit is the only reasonable alternative to cure the insurmountable prejudice that Plaintiff has inflicted on Defendant through Plaintiff's spoliation of the subject tires.  There can be no dispute that Plaintiff's spoliation of the tires was "willful" and

"deliberate."  As evidenced by the Promissory Note attached as Exhibit D to Defendant's Motion for Summary Judgment (#25), Plaintiff voluntarily sold the vehicle and tires to a third party, thereby ignoring his duty to preserve that evidence.  In fact, the tires and vehicle involved in the July 17, 2010 incident were scrapped on October 4, 2010, which was three days before Plaintiff placed Defendant on notice of this incident or claim.

Moreover, an analysis of the <u>Leon</u> court's five factor test strongly favors dismissing Plaintiff's complaint.  While the first, second and fourth factors are not at issue here, the third factor – the risk of prejudice to the party seeking sanctions – strongly favors dismissal.  Plaintiff spoliated the central pieces of evidence in this case.  It is difficult to think of an instance whereby a defendant could be more prejudiced than where it is forced to defend against a product defect claim without being able to examine the product.  The primary manner in which defendants defend against product defect claims is by retaining experts to examine the product and opine on whether it is, in fact, defective.  Plaintiff's spoliation has deprived Defendant of seeking such evidence thereby depriving Defendant of its primary and best defense.

The fifth <u>Leon</u> court factor also strongly favors dismissal because there is no less severe sanction that can cure the prejudice wrought by Plaintiff's conduct.  While the Court could bar Plaintiff from offering direct and circumstantial evidence regarding a product defect or instruct the jury on an adverse inference, such remedies are inadequate.  As noted, Defendant has been denied its primary and best means of defending against Plaintiff's claims.  An adverse inference does not cure that problem.  Further, barring all direct and circumstantial evidence of a product defect would result in the same outcome because Plaintiff's complaint would have to be dismissed for lack of evidence.  See <u>Fire Ins. Exch. v. Zenith Radio Corp.</u>, 747 P.2d 911 (Nev. 1987).  Therefore, the Court would dismiss Plaintiff's complaint as a sanction for spoliation of evidence, if it had not already granted Defendant's motion for summary judgment on the claims.

IV.  Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#25) is **GRANTED**;

IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant and against Plaintiff.

DATED this 14th day of February 2013.


_____
Kent J. Dawson
United States District Judge